APPELLATE CASE NO. 13-55421

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

―――――――――――

THE RAY CHARLES FOUNDATION

*Plaintiff-Appellant,*

v.

RAENEE ROBINSON; RAY CHARLES ROBINSON, Jr.; SHEILA ROBINSON; DAVID ROBINSON; ROBERT F. ROBINSON; REATHA BUTLER; and ROBYN MOFFETT

*Defendants- Appellees.*

―――――――――――

## APPELLEES' ANSWERING BRIEF

―――――――――――

Appeal From The United States District Court for the Central District of California, Audrey B. Collins, District Court Judge, Case No. 12-CV-02725 ABC (FFMx)

―――――――――――

TOBEROFF & ASSOCIATES, P.C.
Marc Toberoff
*mtoberoff@ipwla.com*
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Defendant-Appellees*
*Raenee Robinson, Ray Charles Robinson,*
*Sheila Robinson, David Robinson, Robert F. Robinson,*
*Reatha Butler, and Robyn Moffet.*

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ...................................................................1

COUNTERSTATEMENT OF ISSUES PRESENTED ......................................1

STATEMENT OF THE CASE.........................................................................1

STATEMENT OF FACTS ...............................................................................3

      A.    Factual Background.........................................................................3

      B.    Proceedings Below..........................................................................4

STANDARD OF REVIEW ...............................................................................6

SUMMARY OF ARGUMENT ..........................................................................7

ARGUMENT ..................................................................................................10

I.    RCF LACKS THIRD-PARTY STANDING ............................................12

II.    17 U.S.C. § 501(b) AND/OR 37 C.F.R. § 201.10 DO NOT
      CONFER STANDING ON RCF ............................................................16

      A.    Section 501(b) Does Not Confer Standing On "Beneficial
            Owners" Outside Of Copyright Infringement Suits.......................16

            1.    Section 501(b) Does Not Abrogate The Prudential
                Standing Rules As To "Beneficial Owners" In General.......21

      B.    Under The Facts Alleged In RCF's Complaint, RCF Is Not
            Even A "Beneficial Owner"............................................................22

i

1.  RCF Cannot Amend Its Complaint To Allege Inconsistent Facts.................................................................24

C.  37 C.F.R. § 201.10(f)(6) Does Not Confer Standing on RCF........26

III.  RCF'S ALLEGED ROYALTIES ARE NOT WITHIN THE "ZONE OF INTERESTS" PROTECTED BY THE TERMINATION PROVISIONS.................................................30

IV.  THE DISTRICT COURT PROPERLY DENIED LEAVE TO AMEND AS FUTILE.................................................35

V.  RCF'S POLICY ARGUMENTS ARE UNAVAILING...........................37

CONCLUSION.................................................39

CERTIFICATE OF COMPLIANCE

ADDENDUM

STATEMENT OF RELATED CASES

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Alanis-Bustamante v. Reno*,
  201 F.3d 1303 (11th Cir. 2000)......................................................19

*Alaska v. Babbitt*,
  72 F.3d 698 (9th Cir. 1995) *cert. denied*, 517 U.S. 1187 (1996) ....................28

*Albernaz v. U.S.*,
  450 U.S. 333 (1981) ......................................................21

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) ......................................................19

*Andrus v. Glover Constr. Co.*,
  446 U.S. 608 (1980) ......................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................23

*Association of Data Processing Serv. Organizations, Inc. v. Camp*,
  397 U.S. 150 (1970) ......................................................31

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
  501 U.S. 104 (1991) ......................................................22

*Bennett v. Spear*,
  520 U.S. 154 (1997). ............................................ 11, 21, 22, 31, 33

*Bourne Co. v. MPL Communications, Inc.*,
  675 F. Supp. 859 (S.D.N.Y. 1987)......................................................20

*Bread Political Action Comm. V. Fed. Election Comm'n*,
  455 U.S. 577 (1982) ......................................................19

*Carrico v. City & County of San Francisco*,
  656 F3d 1002 (9th Cir. 2011)......................................................36

*Cetacean Cmty. v. Bush*,
   386 F.3d 1169 (9th Cir. 2004) ........................................................................32

*Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984) ........................................................................28

*City of Arlington v. FCC*,
   596 U.S. __, 133 S.Ct. 186 (2013). ........................................................................28

*City of L.A. v. County of Kern*,
   581 F.3d 841 (9th Cir. 2009) ........................................................................34

*Clarke v. Sec. Indus. Ass'n*,
   479 U.S. 388 (1987) ........................................................................33

*Colony Cove Props., LLC v. City of Carson*,
   640 F.3d 948 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 456 (2011) ......................6

*Elk Grove Unified Sch. Dist. v. Newdow*,
   542 U.S. 1 (2004) ........................................................................14

*Entergy Corp. v. Riverkeeper, Inc.*,
   556 U.S. 208 (2009) ........................................................................19

*Estate of McKinney v. United States*,
   71 F.3d 779 (9th Cir. 1995) ........................................................................31, 34

*FEC v. Akins*,
   524 U.S. 11 (1998). ........................................................................35

*Fleck & Assocs. v. City of Phoenix*,
   471 F.3d 1100 (9th Cir. 2006) ........................................................................15

*Gordon v. City of Oakland*,
   627 F.3d 1092 (9th Cir. 2010) ........................................................................36

*Henthorn v. Department of Navy*,
   29 F.3d 682 (D.C. Cir. 1994) ........................................................................24

*Hong Kong Supermarket v. Kizer*,
830 F.2d 1078 (9th Cir. 1987) ..............................................................31

*In re Bankr. Estate of Midland Euro Exch. Inc.,*
347 B.R. 708 (Bankr. C.D. Cal. 2006) ....................................................18

*Iglesias v. United States*,
848 F.2d 362 (2d Cir. 1988) ..................................................................29

*Kingvision Pay-Per-View, Ltd. v. Manente*,
2006 WL 120141 (E.D. Cal. Jan 12, 2006) ............................................19

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ...............................................................................7

*Krainski v. State of Nevada ex rel. Bd. of Regents of Nevada System of Higher Ed.*,
616 F3d 963 (9th Cir. 2010) ..................................................................36

*Lacey v. Maricopa County*,
693 F.3d 896 (9th Cir. 2012) ................................................................24

*Manhattan Gen. Equip. Co. v. Comm'r of Internal Revenue*,
297 U.S. 129 (1936) ..............................................................................29

*Marascalco v. Fantasy, Inc.*,
953 F.2d 469 (9th Cir. 1991) ................................................................29

*McCollum v. Cal. Dep't of Corr. & Rehab.*,
647 F.3d 870 (9th Cir. 2011) ...........................................................11, 13

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) ..............................................................24

*Moran v. London Records, Ltd.*,
827 F.2d 180 (7th Cir. 1987) ...........................................................17, 23

*Nat'l Credit Union Admin v. First Nat'l Bank and Trust Co.*,
522 U.S. 479 (1998) ..............................................................................35

*Pony v. County of L.A.*,
  433 F.3d 1138 (9th Cir. 2006). ...................................................................13, 38

*Powers v. Ohio*,
  499 U.S. 400 (1991) .............................................................................11, 13, 16

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291(9th Cir. 1990) .......................................................................25, 35

*Silvers v. Sony Pictures Entm't, Inc.*,
  402 F.3d 881(9th Cir. 2005) ............................................................................32

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ......................................................................................29

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998) ........................................................................................32

*Stock West, Inc. v. Confederated Tribes*,
  873 F.2d 1221 (9th Cir. 1989)...........................................................................7

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
  368 F.3d 1053 (9th Cir. 2004) ..............................................................32, 33, 35

*Thomas v. Mundell*,
  572 F.3d 756 (9th Cir. 2009) ...........................................................................14

*Twentieth Century Fox Film Corp. v. Entm't Distrib.*,
  429 F.3d 869 (9th Cir. 2005). ..........................................................................24

*United States v. Jordan*,
  915 F.2d 622 (11th Cir. 1990)..........................................................................18

*United States ex rel. Sequoia Orange Co. v. Baird–Neece Packing Corp.*,
  151 F.3d 1139 (9th Cir.1998).............................................................................36

*W. Radio Services Co. v. U.S. Forest Serv.*,
  578 F.3d 1116 (9th Cir. 2009)..........................................................................19

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ................................................................6, 10, 23

*Warth v. Seldin*,
   422 U.S. 490 (1975) ...........................................................................10, 15, 38

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .........................................................................6

*Williams v. United Airlines, Inc.*,
   500 F.3d 1019 (9th Cir. 2007) .......................................................................19

*Yount v. Acuff Rose-Opryland*,
   103 F.3d 830 (9th Cir. 1996) .........................................................................17

*Zivkovic v. S. Cal. Edison Co.*,
   302 F.3d 1080 (9th Cir.2002) .........................................................................36

## **Statutes**

17 U.S.C. § 101 et seq. .......................................................................................1

17 U.S.C. § 203(a) .................................................................................. *passim*

17 U.S.C. § 304(c) .................................................................................. *passim*

17 U.S.C. § 501(b) .................................................................................. *passim*

Cal. Code. Civ. P. § 425.16 ............................................................................2, 5

## **Federal Rules and Regulations**

37 C.F.R. § 201.10 ................................................................................. *passim*

Fed. R. Civ. P. 8(a) ...........................................................................................24

Fed. R. Civ. P. 12(b)(1) ................................................................1, 2, 5, 6, 10

Fed. R. Civ. P. 12(b)(6) ............................................................................2, 5, 24

Fed. R. Civ. P. 15 .............................................................................................25

iv

## <u>Secondary Sources</u>

3 M. Nimmer & D. Nimmer,

*Nimmer on Copyright* § 11.08[A] (2010) ...........................................................21

## STATEMENT OF JURISDICTION

This appeal arises from a judgment that dismissed for lack of subject matter jurisdiction, pursuant Fed. R. Civ. Proc. 12(b)(1), plaintiff-appellant The Ray Charles Foundation's ("RCF" or "Appellant") First Claim for a declaratory judgment under 17 U.S.C. §101 et seq..

## COUNTERSTATEMENT OF THE ISSUES PRESENTED

1.    Did the district court properly dismiss RCF's First Claim for lack of standing due to RCF's failure to satisfy the prudential standing requirements?

## STATEMENT OF THE CASE

Raenee Robinson, Ray Charles Robinson, Sheila Robinson, David Robinson, Robert F. Robinson, Reatha Butler, and Robyn Moffett, are a majority of the children of renowned singer-songwriter Ray Charles Robinson (collectively, "Defendants").  In March 2010, they exercised their rights under the Copyright Act, 17 U.S.C. §§ 304(c) and 203(a), to recover their father's copyrights in a number of his musical compositions by filing and serving notices of termination of their father's old copyright grants on third party grantees and their successor-in-interest, Warner/Chappell Music Inc. ("Warner Chappell").

Since then, none of the grantees or Warner/Chappell have opposed or otherwise challenged the validity or scope of the children's statutory termination.

1

The Ray Charles Foundation ("RCF") nonetheless sued the children, filing a complaint that was fundamentally flawed, both legally and factually. RCF's First Claim sought a declaratory judgment that Warner/Chappell continued to own the subject copyrights on the purported ground that the children's notices of termination were invalid. Its Second Claim alleged that Defendants' exercise of their statutory termination rights purportedly constituted a breach of contract, and its Third Claim alleged that the termination notices breached the implied covenant of good faith and fair dealing.

In response, Defendants filed a motion to dismiss RCF's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and a motion to strike RCF's unsupportable state law Second and Third Claims under California's anti-SLAPP statute, Cal. Code. Civ. P. § 425.16.

The district court (Collins, J.) granted the motion to strike as to the state law claims and awarded attorneys' fees to Defendants per the anti-SLAPP statute. The district court also granted Defendants' motion to dismiss the First Claim, due to RCF's lack of standing to seek a declaratory judgment under the Copyright Act as to Warner/Chappell's copyright ownership, and Defendants' statutory notices of termination.

RCF only appeals the dismissal of its First Claim. It asserts that because it is a royalty recipient, it purportedly has standing, as a "beneficial owner" under 17

2

U.S.C. §501(b). Section 501(b), however, expressly concerns copyright infringement actions only. Aside from Section 501(b), RCF relies on a passing reference in 37 C.F.R. § 201.10(f)(6), which states that the mere recordation of a notice of termination with the Copyright Office is without prejudice to any claims regarding such termination.

As RCF's arguments are without merit and have no legal support, the district court's well-reasoned dismissal of the First Claim should be affirmed.

## STATEMENT OF FACTS

### A.    Factual Background

Ray Charles Robinson ("Charles"), who passed away in June 2004, was a highly successful music artist whose career spanned many decades. 2 ER 68-69 at ¶ 1. In March 30, 2010, the requisite majority of Charles' children ("Defendants") exercised their rights as statutory heirs to recover ownership of the copyrights (the "Copyrights") to certain of their father's musical compositions (the "Compositions") by terminating, pursuant to 17 U.S.C. §§ 304(c) and 203(a), Charles' old copyright grants to third party music publishers. 2 ER 80-81 at ¶34. Defendants went to great lengths to comply with the procedures set forth in Sections 304(c) and 203(a), and in 37 C.F.R. §201.10, serving thirty-nine statutory notices of termination (the "Termination Notices" or "Termination") on such copyright grantees and their successor-in-interest Warner/Chappell Music, Inc.

3

("Warner/Chappell"). 2 ER 80-81 at ¶¶ 34, 36. Per the termination "window"

proscribed by 17 U.S.C. § 304(c)(4)(a), the earliest effective termination date as to

any of the Compositions was April 1, 2012. 2 ER 81 at ¶35

None of the relevant grantees or their successor, Warner/Chappell, who were

each served with the Termination Notices, have opposed or challenged the validity

or scope of the Termination. 2 ER 80-81 at ¶ 34; 1 ER 64-65. As

Plaintiff/Appellant RCF was neither a grantee nor the successor of a grantee of any

of the subject Compositions, it was not served with Defendants' Termination

Notices, in conformance with 17 U.S.C §§304(c), 203(a) and 37 C.F.R. §201.10.

## B.    Proceedings Below

On March 29, 2012, two years after Defendants had served their

Termination Notices, RCF filed its complaint. 2 ER 68-96. RCF's First Claim (2

ER 83-86 at ¶¶ 41-47) is for a declaratory judgment that "copyright ownership . . .

should continue to rest with Warner/Chappell Music" based on the purported

invalidity of Defendants' Termination Notices under 17 U.S.C. §§ 203(a) and

304(c). Its Second Claim (2 ER 86-87 at ¶¶ 48-51) alleged that by serving

statutory notices of termination on third parties, Defendants breached a short

"Statement" they each signed years earlier which purported to "waiv[e] any right

to make a claim against [their father's] estate." RCF's Third Claim (2 ER 87-88 at

¶¶52-55) reframed its Second Claim as an alleged breach of the implied covenant of good faith and fair dealing.

On July 3, 2012, Defendants filed a motion to dismiss RCF's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (C.D. Cal. Case No. 12-CV-02725 Docket ("Dkt.") No. 16) and a motion to strike RCF's state law Second and Third Claims pursuant to California's anti-SLAPP statute, Cal. Code. Civ. P. § 425.16 (Dkt. No. 15).

On September 24, 2012, the district court heard oral argument.  On September 25, 2013, the court requested supplemental briefing as to the issue of whether RCF had standing to bring its First Claim (1 ER 37-38); which the parties filed on October 2, 2012 (Dkt. Nos. 32, 33).

On January 25, 2013, the district court granted Defendants' motion to strike the state law claims; finding that Defendants' filing of statutory notices of termination constituted "protected activity" within California's anti-SLAPP statute, and that RCF showed no probability of succeeding on their legally unsupportable claims.  1 ER 55.  The court reasoned that Defendants' notices of termination to third party grantees did not challenge their father's estate, and that, in any event, per 17 U.S.C. §§ 203(a)(5) and 304(c)(5), the children could not have waived or limited their future termination rights.  The court awarded Defendants their attorneys' fees pursuant to Cal. Code Civ. P. § 425.16(c).  1 ER 55.

5

On January 25, 2013, the district court also granted Defendants' motion to dismiss the First Claim, due to RCF's failure to satisfy applicable prudential standing requirements, and lack of standing to seek a declaratory judgment regarding notices of termination to third parties under the Copyright Act. 1 ER 65.

On February 11, 2013, the district court entered judgment in favor of Defendants. 1 ER 66-67.

On March 11, 2013, RCF filed a notice of appeal. 2 ER 140-41. On September 18, 2013, RCF filed its opening brief, solely appealing the district court's dismissal of its First Claim. OB 5.

## STANDARD OF REVIEW

The Court reviews *de novo* the district court's grant of a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *See Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 456 (2011). Dismissal is appropriate under Fed. R. Civ. P. 12(b)(1) when the court lacks subject matter jurisdiction over the claim. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A Rule 12(b)(1) motion may attack the plaintiff's standing under the Copyright Act. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003). The burden of proof in a Rule 12(b)(1) motion is on the plaintiff asserting subject matter jurisdiction, and the court will presume a lack of jurisdiction until the pleader proves otherwise.

6

*See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989); 1 ER 58.

## SUMMARY OF ARGUMENT

Appellant RCF lacks standing to bring its First Claim for a declaratory judgment under the Copyright Act.  As the district court correctly held, RCF fails to satisfy well settled prudential standing requirements.  RCF's First Claim seeks a declaration under the Copyright Act that "copyright ownership . . . should continue to rest with [third party] Warner/Chappell Music" on the alleged grounds that Defendants' statutory notices of termination are invalid under Sections 203(a) and 304(c) of the Copyright Act.  2 ER 82-86 at ¶¶ 39, 41-47.  RCF, however, (1) fails to qualify for third-party standing, and (2) fails to demonstrate that it has direct standing under the Act, either expressly or by falling within the "zone of interests" of Sections 203(a) and 304(c), the termination provisions on which RCF purports to base its claim.

RCF lacks standing to bring its First Claim because it does not own any of the subject Copyrights and cannot assert the purported ownership rights of a third party, Warner/Chappell, who chose not to challenge Defendants' bona fide Termination Notices.  Plaintiff fails to satisfy at least two (of the three) prerequisites for third-party standing, namely (1) that it has a close relationship

with Warner/ Chappell and their interests are aligned, and (2) that Warner/Chappell is unable to assert its own rights.

On appeal, RCF attempts to navigate around its complaint by arguing not that it has third party standing, but rather standing as a purported "beneficial owner," because it receives some royalties from Warner/Chappell. RCF's standing theory has no legal support, and contradicts the factual allegations in its own complaint.

RCF's argument boils down to a five false constructs: (1) that 17 U.S.C. §501(b), and copyright infringement cases allegedly codified by this section, confer standing on a "beneficial owner" generally; (2) that a passing reference in 37 C.F.R. § 201.10(f)(6) confers standing on *anyone* to challenge a third party's notice of termination; (3) that these provisions abrogate prudential standing requirements; (4) that, if prudential standing requirements apply, RCF's royalties purportedly fall within the "zone of interest" protected by the Act's termination provisions, and (5) that RCF is free to amend its complaint to include factual allegations which contradict its current factual allegations.

RCF is wrong on all counts.

*First*, Section 501(b) does not concern or confer standing on a "beneficial owner" to litigate third party termination disputes. It expressly only confers standing on a "beneficial owner" to bring a copyright infringement claim, and

8

nothing in the case law, statute or legislative history supports extending Section 501(b) to other claims.

*Second*, 37 C.F.R. § 201.10(f)(6), which simply states that mere recordation of a notice of termination is without prejudice to the rights of any party, does not, could not, nor was intended to confer standing on anyone to sue regarding third party termination notices.

*Third*, Section 501(b) and 37 C.F.R. § 201.10(f)(6) do not generally abrogate prudential standing rules, either expressly or impliedly. There is no indication that this was Congress's or the Register of Copyright's intent, respectively.

*Fourth*, even if RCF were a "beneficial owner" it would not have standing under 17 U.S.C. §§ 203(a) and 304(c) on which it bases its First Claim. These termination provisions unambiguously concern two interests: (1) those of an author or his statutory heirs in recovering previously granted copyrights, and (2) those of the grantee or its successor in such copyrights. The "zone of interest" and standing under these statutory sections does not extend to anyone who receives a royalty or have some other contingent financial participation.

*Fifth*, RCF, by its own allegations, is not even a "beneficial owner." The factual narrative of RCF's complaint is that the Compositions were written as "works for hire," and, as this Circuit has held, an entitlement to royalties with respect to a "work for hire" does not qualify as "beneficial ownership." *See*

9

*Warren*, 328 F.3d at 1145. Furthermore, RCF cannot now amend its complaint with wholly inconsistent factual allegations.

RCF's appeal reduces to an argument that it has standing because it allegedly receives less royalties due to Defendants' Termination Notices. Alleged injury alone, however, does not equate to an enforceable legal right nor abrogate the prudential standing requirements. As the Supreme Court has held, "even when the plaintiff has alleged injury sufficient to meet the [Art. III] 'case or controversy' requirement … the plaintiff … cannot rest his claim to relief on the legal rights or interest of third parties." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). A plaintiff's claim must be based on its own legal rights. Here, RCF alleges only injury and seeks a determination of Warner/Chappel's copyright ownership. Defendants' recovery of their father's copyrights may cause RCF collateral loss, but it does not violate any rights or interests of RCF under the Copyright Act.

For all these reasons, and as further detailed below, the district court's dismissal of RCF's First Claim pursuant to Fed. R. Civ. Proc. 12(b)(1) for lack of standing should be affirmed.

## ARGUMENT

"Th[e] threshold question in every federal case" is whether the court has power to hear the case, of which a key issue is whether the plaintiff has proper standing to bring the suit. *Warth*, 422 U.S. at 498. In resolving this issue, courts

10

look not only to Article III's "case and controversy" requirements, but also to a number of "prudential limitations" developed in the case law. *Id*. at 499-500 ("Apart from this minimum constitutional mandate, this Court has recognized other limits on the class of persons who may invoke the courts' decisional and remedial powers.").

Most of Appellant RCF's arguments go to its alleged injury (*i.e*., domestic royalties), causation and redressability – threshold elements of Article III standing. *See McCollum v. Cal. Dep't of Corr. & Rehab*., 647 F.3d 870, 878 (2011). This is not particularly relevant to RCF's appeal, however, as Defendants did not challenge and the district court acknowledged that constitutional standing had at least been "plausibly alleged." 1 ER 59.[1] The district court's dismissal of RCF's action was based on its failure to satisfy critical prudential standing requirements (1 ER 64-65), which RCF does nothing to cure on appeal.

An important prudential limitation is the basic prohibition against third party standing. *Powers v. Ohio*, 499 U.S. 400, 410-411 (1991). Another central prudential standing requirement is that "a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision [here, the Copyright Act's termination provisions] … invoked in the suit." *Bennett v. Spear*, 520 U.S. 154, 162 (1997). RCF's First Claim fails on both counts.

---

[1] The district court did not "conclude[] that the Foundation has Article III standing" as stated by RCF (OB 16).

## I.     RCF LACKS THIRD-PARTY STANDING

In requesting to have Defendants' Termination Notices declared void and/or untimely, RCF's First Claim effectively asserts not its own legal rights, but the purported rights of third party Warner/Chappell.  This is perhaps best demonstrated by RCF's own complaint, where it argues that because the Termination Notices are supposedly "null and void . . . the proper copyright ownership . . . should continue to rest with Warner/Chappell Music."  2 ER 82-83 at ¶39.  As shown below, Plaintiff does not have standing to seek a judicial declaration as to Defendants' Termination Notices and/or the copyright interests of Warner/Chappell.

RCF's First Claim seeks declaratory relief as to the alleged invalidity of the Termination Notices.  2 ER 72, 83-86 at ¶¶ 8, 41-47.  RCF does not allege, however, that either Ray Charles' estate or RCF has ever owned any of the Copyrights in question.  Rather, RCF admits that the Copyrights have long been held by various third party music publishers, of which Warner/Chappell is the successor-in-interest, and all such entities are unrelated to RCF.  *See, e.g.*, 2 ER 77-83 at ¶26 ("Progressive owned the copyright..."); ¶28 ("Progressive would register the copyright in said song[s] indicating itself as the owner ... ."); ¶34 (describing Warner/Chappell as Progressive's successor-in-interest); ¶39 (concluding that "copyright ownership . . . should continue to rest with Warner/Chappell Music").  RCF's complaint thus concedes that it does not assert

12

its right to ownership, but those of Warner/Chappell, which decidedly did not
challenge the Termination Notices or make such assertion. *Id.*

 "In the ordinary course, a litigant must assert his or her own legal rights and
interests, and cannot rest a claim to relief on the legal rights or interests of third
parties." *Powers*, 499 U.S. at 410-411. This is a "fundamental restriction" on the
courts' authority and has only "limited exceptions." *Id.* For third party standing, a
plaintiff must show (1) actual injury, (2) a close relationship with the third party
whose rights he asserts, and (3) an inability of the third party to assert his or her
own rights. *Id.* (noting that all "three important criteria" must be satisfied); *see
also McCollum*, 647 F.3d at 879 (same).

Here, RCF's complaint fails to satisfy at least two of these three
requirements. Apart from receiving passive royalties from Warner/Chappell, RCF
has not claimed or shown a close relationship with it. *See* 2 ER 71-72 at ¶5. There
is also no indication its "interests are aligned with those of the party whose rights
are at issue." *Pony v. County of L.A.*, 433 F.3d 1138, 1147-1148 (9th Cir. 2006).
Everything points to the opposite conclusion. Even though Warner/Chappell was
served with Defendants' Termination Notices in March, 2010, neither it nor any of
its predecessors have challenged or resisted the legitimate Termination. 2 ER 80-
81 at ¶ 34. RCF does not and cannot reasonably argue that Warner/Chappell – one
of the world's largest music publishing companies – is unable to assert its own

13

copyrights, were the Termination invalid.

Indeed, Warner/Chappell, as the successor-in-interest to the copyright grants in question (2 ER 77-83 at ¶¶ 26-29, 34, 39), would almost certainly be "the most effective advocate of the rights at issue." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004) (quotations and citations omitted)(noting that the rule against third party standing is to ensure that "the most effective advocate of the rights at issue is present to champion them" and to avoid the "adjudication of rights which those not before the Court may not wish to assert"). As RCF does not and cannot demonstrate either (1) that is has a close relationship with Warner/Chappell, or (2) that Warner/Chappell is unable to assert its own alleged rights, Plaintiff lacks third-party standing to pursue its First Claim. *See Thomas v. Mundell*, 572 F.3d 756, 763 (9th Cir. 2009) (affirming dismissal of a declaratory judgment claim and rejecting plaintiff's standing to assert the rights of others).

RCF's opening brief ("OB"), like its complaint, attempts to ground its standing solely in the injury it may suffer as a "consequence[]" of Defendants' statutory recovery of their father's copyrights. OB 1, 10, 11, 12, 26, 45, 46. According to RCF, "if given effect, the termination of copyright transfer notices served by Defendants will adversely affect the[] royalty payments" it receives from Warner/Chappell, and this purportedly gives it "standing to bring this action." 2 ER 71-72 at ¶ 5. Appellant is wrong as a matter of law.

14

As the Supreme Court has explained, "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement . . . the plaintiff generally . . . cannot rest his claim to relief on the legal rights or interest of third parties." *Warth*, 422 U.S. at 498. That RCF may suffer collateral injury as a consequence of Defendants getting their father's copyrights back from Warner/Chappell, does not give RCF license to assert Warner/Chappell's "continued ownership." *See Fleck & Assocs. v. City of Phoenix*, 471 F.3d 1100, 1105 n.3 (9th Cir. 2006) (explaining that even if plaintiff had alleged a sufficient injury-in-fact, its request for declaratory relief fails under the prudential rule against third party standing).

Accordingly, the district court properly held:

The Foundation has not shown that it has a close relationship with Warner/Chappell or that Warner/Chappell cannot protect its own interests under the Copyright Act. Tellingly, Warner/Chappell has not challenged the validity of the termination notices, which it received almost three years ago (Compl. ¶ 34), suggesting that this is not a case in which the Foundation's "interests are aligned with those of the party whose rights are at issue" or that it "has a sufficiently close connection to [Warner/Chappell] to assert claims on that party's behalf." Pony v. Cnty. of Los Angeles, 433 F.3d 1138, 1147 (9th Cir. 2006). The Foundation also has not shown that Warner/Chappell is unable to assert its own interests here, if it so chooses. Thus, the Foundation does not have standing to assert Warner/Chappell's interests in seeking to invalidate the termination notices.

1 ER 64-65.

**II.    17 U.S.C. § 501(b) AND/OR 37 C.F.R. § 201.10 DO NOT CONFER STANDING ON RCF**

As RCF cannot overcome the "fundamental restriction" on third party standing, *Powers*, 499 U.S. at 410, it pretends on appeal that it is asserting its own rights as a purported "beneficial owner," with a slew of unsupportable, and at times incomprehensible, arguments.  In so doing, RCF erroneously conflates injury with legal rights, and advances a standing theory that contradicts its own complaint.

In a nutshell, RCF now argues that a combination of 17 U.S.C. § 501(b) and 37 C.F.R. § 201.10 (f)(6) confer standing upon it, though neither give any indication of this.

**A.    Section 501(b) Does Not Confer Standing On "Beneficial Owners" Outside Of Copyright Infringement Suits**

Section 501(b)'s unequivocal language only confers statutory standing on "beneficial owners" to sue for copyright infringement:  "The legal or beneficial owner of an exclusive right under a copyright is entitled … to bring an action for … *infringement*." 17 U.S.C. § 501(b) (italics added).  Here, Plaintiff does not allege infringement, but seeks rather a judicial determination of third party ownership.  2 ER 72, 83-86 at ¶¶ 8, 41-47; *see* 2 ER 105 (RCF: "[T]his is not an action for copyright infringement").  Neither the Copyright Act, nor any case, confers standing on a "beneficial owner" to bring this sort of claim.

16

While RCF finally acknowledges that Section 501(b) applies to infringement actions, it illogically stresses that Section 501(b) codified case law under the 1909 Copyright Act which permitted a beneficial owner to sue for copyright *infringement*. OB 17, 29-30.[2] Later in its brief (OB 36, 41, 42), RCF unpersuasively uses Section 501(b) and its alleged codification of such case law as a springboard for vague policy and statutory construction arguments; again ignoring that both are limited to infringement actions. RCF then broadly concludes, without support, that "by referring to a 'beneficial owner' in Section 501(b), Congress legislated with an expectation that beneficial owners would have standing under the entire 1976 Act," citing a copyright infringement case, *Moran v. London Records, Ltd.,* 827 F.2d 180, 183 (7th Cir. 1987). OB 42. All of this, including RCF's frequent omission of "copyright infringement" in discussing Section 501(b) and such case law, does nothing to advance its First Claim under the Copyright Act's termination provisions.

As it did below, RCF strains to avoid Section 501(b)'s clear language by arguing that the Section's "silence" as to notices of termination somehow supports its position. OB 39 ("Where the text of a particular Section of a statute is silent or

---

[2] For instance, RCF cites *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 834 (9th Cir. 1996) because it mentions "royalties," however *Yount* merely reiterates Section 501(b)'s express statement that beneficial owners can sue for infringement.

ambiguous, courts resolve statutory omissions or ambiguities by reviewing the statute as a whole."). *See* 2 ER 112 ("Congress could have limited its expressed standing requirements under the Copyright Act when it came to challenging termination, but it chose not to."). Notwithstanding that RCF never shows how the Copyright Act "as a whole" confers standing upon it, RCF's arguments turn the canons of statutory construction (and common sense) on their head.

There is a key difference between Congressional silence in general and its decision to limit an exception, as it did in Section 501(b). "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied…." *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980). Furthermore, "[w]here Congress includes particular language in one section of a statute [here, § 501(b)] but omits it in another section of the same Act [§§ 304 (c), 203(a)], it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *United States v. Jordan*, 915 F.2d 622, 628 (11th Cir. 1990). (quotation marks and citation omitted). *See also In re Bankr. Estate of Midland Euro Exch. Inc.*, 347 B.R. 708, 720 (Bankr. C.D. Cal. 2006) ("[I]n light of … clearly worded … exception in [one sub-section of the statute] … the logical interpretation of congressional silence with respect to [a different sub-section]" is that the exception did not apply).

"Had Congress intended [here, to confer standing on a "beneficial owner"

18

regarding third party termination notices] it could easily have achieved it by expressly granting standing." *Bread Political Action Comm. V. Fed. Election Comm'n*, 455 U.S. 577, 583-84 (1982) (refusing to "read an implicit grant of standing into congressional silence"). "Congress's silence … does not raise the inference that it intended to allow an implied right of action." *W. Radio Services Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1125 (9th Cir. 2009).

"[I]mplying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." *Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1024 (9th Cir. 2007) (internal quotation omitted). Unless Congress plainly showed "an intent to create not just a private right but also a private remedy" then "a cause of action does not exist and courts may not create one." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

That Congress expressly conferred statutory standing on a beneficial owner in an infringement action, but not in termination disputes, is persuasive, if not "decisive," that none was intended. *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 239 (2009). "Where Congress knows how to say something, but chooses not to, its silence is controlling." *Alanis-Bustamante v. Reno*, 201 F.3d 1303, 1311 (11th Cir. 2000); *see also Kingvision Pay-Per-View, Ltd. v. Manente*, 2006 WL 120141 (E.D. Cal. Jan 12, 2006) (same).

A few points should nonetheless be made as to RCF's "extrinsic" arguments.

19

*First*, there is no "holistic" evidence (OB 31) to show that Congress intended by Section 501(b), or otherwise, to confer standing on beneficial owners to challenge third party termination notices. RCF thus points to none.

*Second*, despite RCF's suggestion, there are key differences between lawsuits regarding statutory termination and those for copyright infringement. The latter are about enjoining infringement and recovering money damages. There, the interests of both legal and "beneficial owners" will usually be well aligned, as both want to enjoin the infringement and recover damages. In contrast, termination disputes are over the future ownership of a copyright.

As a "beneficial owner" has no claim to ownership, its interests can readily conflict with those of a legal owner, as demonstrated by this case. *See* 1 ER 64 (district court noting that "Warner/Chappell has not challenged the validity of the termination notices"). A terminated grantee may well be more interested in maintaining an amicable relationship with a terminating author or statutory heir to facilitate re-licensing of the subject copyrights at a fair price, rather than suing over valid statutory termination notices. Indeed, the Act itself promotes this by providing a terminated grantee with a competitive advantage in negotiating a new license. *See* 17 U.S.C. § 304(c)(6)(D) (establishing that between the service of a termination notice and its effective date, the subject copyrights may *only* be transferred to the original grantee or its successor); *Bourne Co. v. MPL*

20

*Communications, Inc.*, 675 F. Supp. 859, 865 (S.D.N.Y. 1987) (noting that §304(c)(6)(D) "does give the terminated grantee a preferred competitive position"); 3 M. Nimmer & D. Nimmer, *Nimmer On Copyright* § 11.08[A], n.6 (2010) (same).

A "beneficial owner," however, has no incentive to refrain from challenging a third party's statutory termination, as shown by RCF's unbridled claims.

  1. Section 501(b) Does Not Abrogate The Prudential Standing Rules As To "Beneficial Owners" In General

Plaintiff attempts to rewrite Section 501(b) with muddled argument that "in the 1976 Act, Congress abrogated the prudential standing requirements as it applies to beneficial owners….negat[ing] the zone of interests tests with respect to beneficial owners." OB 47, misrelying on *Bennet v. Spear*, 520 U.S. at 164. *See also* 2 ER 114-115 (RCF: "by enacting a specific standing provision … Congress intended to negate" the prudential standing rules in termination disputes).

Congress is "assume[d] [to] know the law." *Albernaz v. U.S.*, 450 U.S. 333, 341-42 (1981). It "legislates against the background of [the] prudential standing [rules]." *Bennett*, 520 U.S. at 163. The ordinary prudential standing rules apply unless Congress "expressly negate[s]" them. *Id.* RCF admits that "'where a common law principle is well-established… the courts may take it as a given that Congress has legislated with the expectation that the principle will apply except

21

when a statutory purpose to the contrary is evident.'" OB 40 (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 108 (1991)). RCF presents no evidence of this, however, with respect to termination disputes. Congress did not "expressly negate" the prudential standing requirements, nor is "a statutory purpose…contrary" to such requirements, "evident" in any respect.

This case is nothing like *Bennett,* where an environmental statute was held to supersede prudential standing rules because it expressly stated that "any person may commence a civil suit [under the statute]." 520 U.S. at 164. Section 501(b) is unequivocally narrower in defining both who can bring a suit (a "beneficial owner") and the type of suit they can bring ("an action for … infringement").

## B. Under The Facts Alleged In RCF's Complaint, RCF Is Not Even A "Beneficial Owner"

RCF's description of itself as a "beneficial owner," as a successor to Mr. Charles' royalties, irreconcilably contradicts its own complaint. RCF's primary allegation is that Mr. Charles purportedly wrote his "compositions … as works made for hire." 2 ER 84 at ¶ 43(b); *see* 2 ER 77-78 at ¶¶ 25-27. RCF argues that "at this stage of the pleading, [it] need only show that the facts alleged, if proved, would confer standing upon him." OB 18. However, the facts it alleged, if true, defeat its "beneficial ownership." A "work-for-hire" author, even one who

receives royalties, is not a "beneficial owner." *See Warren*, 328 F.3d at 1145 (holding "royalties to a creator of a work for hire, absent an express contractual provision to the contrary, does not create a beneficial ownership interest"); *Moran*, 827 F.2d at 184(same, noting absence of any cases applying the "beneficial ownership" doctrine to "works for hire"). *See* 1 ER 61 (Order: "First, if the Foundation were to demonstrate that the compositions at issue were works made for hire not subject to termination under §§ 304(c) and 203 — as it alleges at length in its Complaint — then the Foundation would not be a beneficial owner able to sue under § 501(b).").

RCF cannot be permitted to proceed with a claim that, if proven true, would defeat the purported basis of its standing to bring the claim in the first place. Therefore, even if RCF's "beneficial owner" standing theory were legally supportable (and it is not), its First Claim would still not survive.

RCF argues the straw man that it may plead in the alternative (OB 28, n. 7); but it never did. RCF never alleged that the Compositions were <u>not</u> "works for hire," or any <u>facts</u> to support this.[3] As properly held by the district court this is insufficient to survive a motion to dismiss. *See* 1 ER 40; *Ashcroft v. Iqbal*, 566 U.S. 662, 675 (2009) (court need not accept as true bare legal conclusions without

---

[3] RCF's "alternative" theory is so non-existent in its complaint that Defendants' original motion to dismiss, RCF's opposition, Defendants' reply, and the district court's tentative ruling all failed to even notice it. Dkt. Nos. 16, 19, 27, 30.

supporting facts).[4]

1. RCF Cannot Amend Its Complaint To Allege Inconsistent Facts

Notwithstanding Defendants' strong disagreement with RCF's "work-for-hire" allegations, RCF cannot now amend its complaint to include such contradictory factual allegations.[5] *See Lacey v. Maricopa County*, 693 F.3d 896, 939 (9th Cir. 2012) (facts newly alleged in an amended complaint "must not be inconsistent with those already alleged"); *Henthorn v. Department of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) (factual allegations in plaintiff's opposition to Rule 12(b)(6) motion "most certainly may not be considered when … they … contradict those alleged in the complaint.").

RCF retorts that it need not amend its complaint because by alleging that Ray Charles wrote the Compositions "pursuant to the Songwriters Contracts in exchange for the right to receive royalties, [it] adequately alleged that it is the beneficial owner of all the copyrights at issue." OB 27-28. This is a *non-sequitur* that fails to address that the entire narrative of RCF's complaint is that the Termination is invalid because the Compositions were purportedly "works made

---

[4] It is also insufficient to survive Fed. R. Civ. P. 8(a), which requires that a complaint "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citations omitted).

[5] Whether a work is "made for hire" is a mixed question of fact and law. *See Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 874-75 (9th Cir. 2005).

24

for hire," nullifying RCF's "beneficial ownership."[6]

RCF's incantation of the general rule that "a court 'should freely give leave to amend when justice so requires'" (OB 50-51, quoting Fed. R. Civ. P. 15) also misses the relevant point, that "[a]lthough leave to amend should be liberally granted, the amended complaint may only allege 'other facts consistent with the challenged pleading'" (internal citations omitted). *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (noting it was impossible for plaintiff to amend to attain standing "without contradicting any of the allegations of his original complaint.").

To properly plead its so-called "alternative" theory, RCF would have to make new factual allegations entirely inconsistent with its original allegations, advanced to claim that the Compositions were all "works for hire." For example, whereas the initial complaint alleges that the "musical compositions were composed [by Ray Charles] as an employee of Progressive," the new complaint would need to state the opposite. 2 ER 77-78 at ¶26. Whereas the initial complaint alleges that the Songwriters Contract merely "memorialize[d]" the

---

[6] *See e.g.* 2 ER 70 at ¶¶3 (emphasizing an "employment relationship" and publisher's alleged ownership of compositions); 77 at ¶¶25 ("Atlantic employed Ray Charles;" "Ray Charles was hired as an employee"), 26 ("musical compositions were composed as an employee of Progressive"); 78 at ¶27 (alleging Progressive's ownership "memorialized" by songwriter's agreements),79 at ¶28 (reiterating alleged employment), 82 at ¶39 ("because the musical compositions were created as an integral part of Ray Charles's employment with Atlantic/Progressive, they are all to be construed as works made for hire").

publishing company's ownership of the Songs at inception as "work for hire," the new complaint would need to state that that the contracts were operative copyright grants. 2 ER 78 at ¶27. Whereas the initial complaint alleges that the Compositions were registered in accordance with Ray Charles's "employment agreement," the new complaint would need to state that there was no such agreement. 2 ER 79 at ¶28.

The list goes on, as RCF's "alternative" theory is inconsistent with the factual narrative of its entire complaint.

### C.  37 C.F.R. § 201.10(f)(6) Does Not Confer Standing on RCF

RCF's heavy reliance on a passing reference in 37 C.F.R. § 201.10(f)(6) – the Register of Copyright's regulation regarding recordation of notices of termination – is misplaced. *See* OB 31-39. RCF devotes nine pages and repetitious subsequent argument to a mere statement that the "[r]ecordation of a notice of termination by the Copyright Office is without prejudice to any party claiming that the legal and formal requirements for issuing a valid notice have not been met, including before a court of competent jurisdiction." 37 C.F.R. § 201.10(f)(6). RCF's arguments are erroneously premised on its false assertion that this is an "interpretation of the statute" by the Register of Copyrights (OB 27, 31, 34, 37, 38, 43, 48) when there is no evidence of this, and the regulation, itself, reflects that it is not.

26

As its title suggests, 37 C.F.R. § 201.10(f) concerns the mere "Recordation" of a termination notice. *Id*. ("(f) Recordation. (1) A copy of the notice of termination will be recorded in the Copyright Office upon payment of the fee prescribed by paragraph (2) of this paragraph (f) and upon compliance with the following provisions: (i) The copy submitted for recordation shall be a complete and exact duplicate of the notice of termination…;"*etc*.).

Subsection (6), relied upon by RCF, reads in full:

(6) A copy of the notice of termination shall be recorded in the Copyright Office before the effective date of termination, as a condition to its taking effect. However, the fact that the Office has recorded the notice does not mean that it is otherwise sufficient under the law. Recordation of a notice of termination by the Copyright Office is without prejudice to any party claiming that the legal and formal requirements for issuing a valid notice have not been met, including before a court of competent jurisdiction.

37 C.F.R. § 201.10(f)(6). If construed in the obtuse manner suggested by RCF, the off-hand reference to "any party" would run afoul of both Article III and the prudential standing requirements. The obvious thrust of sub-section 201.10(f)(6) is that mere recordation by the Copyright Office does not in itself mean that the notice of termination is legally sufficient.

There is no indication that the Register of Copyrights intended by this simple statement to determine or confer standing in lawsuits over terminations, or to abandon well-worn prudential standing requirements. Instead, the Register leaves the resolution of disputes to "a court of competent jurisdiction," rather than

to the Copyright Office when it merely accepts, "without prejudice," the recordation of statutory notices. *Id.*

For the same reason, the case law RCF cites regarding the deferential standard of review given to an administrative agency's construction of a statute (OB 31-33) is equally inapplicable as there is no evidence here of the construction proffered by RCF.[7] The deferential standard applied in such cases when an administrative agency specifically interpreted and addressed statutory terms they were charged with implementing, and actively administered those statutes according to their interpretations. That did not happen here. The Register of Copyright did not promulgate or administer any regulation regarding standing to challenge notices of termination, and 37 C.F.R. § 201.10(f)(6) nowhere even purports to construe or interpret any provision of the statute. RCF places its cart well before its horse as there is "no interpretation of the Act" by the Register of Copyrights to defer to.

---

[7] Each case cited by RCF involves, unlike here, an agency's interpretation of a specific term of a statute, in the process of implementing it. *See Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) (concerning EPA's interpretation of the term "stationary source" in the Clean Air Act Amendments for the purpose of administering it); *Alaska v. Babbitt*, 72 F.3d 698 (9th Cir. 1995) *cert. denied*, 517 U.S. 1187 (1996) (holding that federal agencies' interpretation of the term "public land" from the Alaska National Interest Lands Conservation Act to include certain navigable waters was reasonable); *City of Arlington v. FCC*, 596 U.S. __, 133 S.Ct. 186 (2013) (concerning FCC's interpretation of the term a "reasonable period of time" in the Telecommunications Acts, in administering it).

Ironically, RCF relies on a statement in *Marascalco v. Fantasy, Inc.*, 953

F.2d 469, 473 (9th Cir. 1991) "that courts should generally defer to the Register's

interpretation of the copyright statute." The *Marascalco* Court, however, declined

to do so because the Register, as here, did not address the pertinent issue in its

regulations. *Id.* ("While we accept Fantasy's basic premise, the Register has *not*

expressed an opinion on the time-of-vesting issue."); at 474 ("There is no

authoritative agency interpretation of the § 304(a) time-of-vesting issue to which

deference is due.").[8]

Furthermore, even if this regulation had purported to confer standing it is

doubtful it could do so. *See Iglesias v. United States*, 848 F.2d 362, 366 (2d Cir.

1988) ("A regulation … may not serve to amend a statute."); *Manhattan Gen.*

*Equip. Co. v. Comm'r of Internal Revenue*, 297 U.S. 129, 134 (1936) ("The power

… to administer a federal statute and to prescribe rules and regulations to that end

is not the power to make law, for no such power can be delegated by Congress").[9]

---

[8] RCF also cites *Skidmore v. Swift & Co.*, 323 U.S. 134,140 (1944) for the
proposition that greater deference should be afforded to the Register of Copyright's
regulations, as opposed to its findings. OB 34 n.2. Affording greater deference
here to 37 C.F.R. § 201.10(f)(6), per RCF's reading of *Skidmore*, would suggest
that the mere *recordation* of a termination notice is without prejudice to any
challenge to the notice, not that a court must confer standing to challenge a
termination notice on any and all third-parties.

[9] RCF argues that "Sections 203(a)(4)(B) and 304(c)(4) specifically direct the
Register to promulgate regulations to effectuate the termination provisions" (OB
32). This, however, simply tasks the Register with setting guidelines for the form,

RCF's efforts to circumvent the prudential limitations on third party standing, by reading into a passing reference in 37 C.F.R. § 201.10(f)(6), are unsupported and unpersuasive.  Accordingly, the district court duly rejected RCF's falsely premised argument.  1 ER 62, n.13 ("The Court rejects the Foundation's argument that a passing reference to 'any party' in the regulations implementing §§ 304(c) and 203 alters the plain text of those Sections to allow a beneficial owner of a copyright to challenge a termination notice.").

## III.  RCF'S ALLEGED ROYALTIES ARE NOT WITHIN THE "ZONE OF INTERESTS" PROTECTED BY THE TERMINATION PROVISIONS

The district court also correctly found, in dismissing RCF's First Claim, that its loss of certain domestic royalties does not fall within the "zone of interests" protected by the Copyright Act's provisions, 17 U.S.C. §§ 304(c), 203(a),  under which RCF purported to challenge Defendants' Termination Notices.  1 ER 59-64.

The relevant inquiry is "whether the interest sought to be protected by complainant is arguably within the zone of interests to be protected or regulated by the statute … in question."  *Association of Data Processing Serv. Organizations, Inc. v. Camp,* 397 U.S. 150, 153 (1970).  "Whether a plaintiff's interest is ...

---

content, and service of notices of termination, not standing or any other substantive legal issue.  *See* 17 U.S.C. § 203(a)(4)(B)("The notice shall comply, in form, content, and manner of service, with requirements that the Register of Copyrights shall prescribe by regulation."); §304(c)(4) (same).

protected ... by the statute ... is to be determined ... by reference to the particular provision of law upon which the plaintiff relies." *Bennett*, 520 U.S. at 175-76 (internal quotations omitted). "[T]he plaintiff must establish that the injury he complains of ... falls within the 'zone of interests' sought to be protected *by the statutory provision whose violation forms the legal basis for his complaint.*" *Id.* at 176 (emphasis in original) (citations omitted).

Importantly, "zone of interest" considerations are in addition to and do not supplant third party standing requirements. As the Ninth Circuit has explained, the prudential limitations on standing require that the plaintiff *both* "assert his own rights, rather than rely on the rights or interests of third parties" <u>and</u> "allege an interest that is arguably within the zone of interests protected or regulated by the statute or constitutional guarantee in question." *Estate of McKinney v. United States*, 71 F.3d 779, 782 (9th Cir. 1995); *see also Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir. 1987) (same). "Failure to satisfy *any* of these … prudential requirements defeats standing." *Estate of McKinney*, 71 F.3d at 782. (italics added).

RCF's arguments below, as to the "zone of interest" inquiry, held no water and, on appeal, its retooled arguments are equally unpersuasive. RCF argues that "because the Foundation unquestionably has Article III standing…the 'zone of interests' inquiry is moot." OB 45. This is contrary to law. In an effort to support

31

this, RCF quotes part of a sentence from *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004). But in the very next sentence of the same paragraph this Court states unequivocally: "If a plaintiff has suffered sufficient injury to satisfy the jurisdictional requirement of Article III but Congress has not granted statutory standing, that plaintiff cannot state a claim upon which relief can be granted." *Id.*[10] *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 at 97 (1998) ("[Statutory standing] has nothing to do with whether there is a case or controversy under Article III.").

To prop up its failing argument RCF circles back to Section 501(b) (OB 47, "Congress abrogated the prudential standing requirement as it applies to beneficial owners."), but, as shown above and noted by the district court, the confinement of this Section to infringement actions and the Copyright Act's silence regarding other claims by beneficial owners, casts the opposite inference. *See* 1 ER 62.

RCF next argues, again without support, that the zone of interest analysis is invoked "where a party asserts a constitutional claim or challenges an agency regulation, not where a plaintiff challenges the actions of private parties… ." OB 46. This is also contrary to law. In fact, RCF cites *Thinket Ink Info. Res., Inc. v.*

---

[10] In the "Standard of Review" section of its brief, RCF conceded that "[t]o establish standing, the Foundation must allege facts sufficient to support both Article III standing and standing under the 1976 Copyright Act." OB 18, citing *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 883-84 (9th Cir. 2005).

*Sun Microsystems, Inc.*, 368 F.3d 1053, 1056(9th Cir. 2004) (OB 48), concerning the actions of a private party that allegedly caused the plaintiff monetary harm. *Thinket*, held that an SBA-certified minority-owned corporation fell within the "zone of interests" of a statute crafted to protect minority "persons" from discrimination. 368 F.3d at 1060. This is a far cry from taking 17 U.S.C. §§ 304(c) and 203(a) which explicitly include authors, their statutory heirs, grantees and their successors, but omit "beneficial owners," and imputing from this a specific legislative intent to protect "beneficial owners."

Furthermore, "the breadth of the zone of interests varies according to the provisions of law at issue, so that what comes within the zone of interests of a statute for purposes of obtaining judicial review of administrative action under the 'generous review provisions' of the APA may not do so for other purposes." *Bennett*, 520 U.S. at 163. By imputing the "not meant to be especially demanding" zone of interest requirements in APA cases (OB 48, misciting and misquoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987)), RCF ignores *Bennet*'s warning and narrow holding. Indeed, the Supreme Court expressly stated in *Clarke* that the "zone of interest" analysis "requir[es] more from the would-be plaintiff" in *private causes of action* than for review of administrative actions under the broad review provisions of the APA. 479 U.S. at 400, n.16.

RCF's "zone of interest" arguments also mischaracterize its own complaint.

33

While RCF's First Claim may be motivated by royalties, it does not seek to litigate that interest. *See City of L.A. v. County of Kern*, 581 F.3d 841, 846 (9th Cir. 2009) (explaining "the zone of interests test turns on the interest sought to be protected, not the harm suffered by the plaintiff"). The First Claim is about copyright ownership, not royalties. It requests a declaration that Defendants' Terminations are invalid such that "ownership [of the copyrights] should continue to rest with Warner/Chappell Music." 2 ER 82-85 at ¶¶ 39, 43. While copyright ownership might arguably fall within the "zone of interests" of the termination provisions, RCF does not and cannot claim any. It instead impermissibly "rel[ies] on the rights or interests of third parties," "defeat[ing] standing," as shown above. *Estate of McKinney*, 71 F.3d at 782.

Even if RCF's First Claim were to enforce its royalties, that would not fall within the "zone of interests" protected by the Copyright Act's termination provisions. Sections 203(a) and 304(c) concern two interests: (1) those of an author and/or his statutory heirs in recovering a previously granted copyright(s), and (2) those of an original or successor grantee in not losing such copyright(s) to an improper termination. *See* 1 ER 60-61 (district court, identifying the interested parties as authors/heirs and grantees).

RCF's interest in "continu[ing] to receive the Domestic Royalties" (OB. 11) is not even "marginally related" to the purposes of Sections 203(a) and 304(c).

34

*City of L.A.,* 581 F.3d at 847 (plaintiff is *not* within the "zone of interest" "if the plaintiff interests are … marginally related to … the purposes" of the statute").

The termination provisions do not mention royalty recipients, profit participants or any other third party interests, and none of the requirements or protections of the termination provisions are aimed at such third parties. *See* 17 U.S.C. § 203 (a), §304(c). "Indeed, because the Foundation is not a grantee of the rights to be terminated or its successor, Congress did not even require the statutory heirs to provide it with statutory notice of the termination, let alone give it a seat at the table during the termination process." 1 ER 64; *see* 17 U.S.C. § 203 (a)(4), §304(c)(4). *Compare FEC v. Akins*, 524 U.S. 11, 20 (1998) (claim was the "kind that [statute] seeks to address").[11]

## IV.   THE DISTRICT COURT PROPERLY DENIED LEAVE TO AMEND AS FUTILE

The district court correctly denied RCF leave to amend its complaint "because all of the flaws identified are legal, [and] any amendment would be futile." 1 ER 65, *citing Reddy*, 912 F.2d at 296 (holding it "was not an abuse of

---

[11] The cases RCF cites concern interests that were very clearly within the "zone of interests" to be protected by the statute at issue. *See, e.g.*, *Thinket Ink Info Res., Inc.,* 368 F.3d at 1060 ("allegations easily br[ought] the corporation within the 'zone of interest' protected by" the statute); *Nat'l Credit Union Admin v. First Nat'l Bank and Trust Co.*, 522 U.S. 479, 492 (1998) (the "link" between the regulation and the interest at stake was "unmistakable").

discretion" to dismiss without leave to amend, where plaintiff lacked standing under complaint and it could not amend complaint to confer standing without contradicting the allegations of original complaint).

A district court's denial of leave to amend a complaint is generally reviewed for an abuse of discretion. *See Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1087 (9th Cir.2002), citing *United States ex rel. Sequoia Orange Co. v. Baird–Neece Packing Corp.,* 151 F.3d 1139, 1147 (9th Cir.1998).

Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal. *See Carrico v. City & County of San Francisco*, 656 F3d 1002, 1008 (9th Cir. 2011) (denying leave to amend as futile where appellant lacked standing – "Appellants' principal argument is that the allegations of their amended complaint are sufficient to confer standing. They seek leave to amend only as an afterthought."); *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (affirming denial of leave to amend as "amendment of the complaint would be futile").

 A proposed amendment is "futile" if it is "clear . . . that the complaint could not be saved" by amendment. *Krainski v. State of Nevada ex rel. Bd. of Regents of Nevada System of Higher Ed.*, 616 F3d 963, 972 (9th Cir. 2010) (affirming dismissal without leave to amend as plaintiff could plead no new facts in complaint to overcome its shortcomings).

RCF does not and cannot point to any amendment that could save its complaint from dismissal for lack of standing. RCF points solely to its erroneous "beneficial ownership" theory of standing. Even if RCF were allowed to make the *inconsistent* allegations required for "beneficial ownership," it would still lack standing due to its inability to satisfy the prudential standing requirements.

As the district court correctly reasoned it "need not address the parties' disagreement over whether the Foundation can amend its complaint to allege that the compositions at issue were <u>not</u> works made for hire" to enable "beneficial ownership" (see pages 24-26, supra) because, even then, RCF lacks standing to sue under the Copyright Act's termination provisions, and "lacks third-party standing to assert the interests of Warner/Chappell." 1 ER 57.

## V. RCF'S POLICY ARGUMENTS ARE UNAVAILING

RCF's policy arguments amount to a critique of established law and are directed at the wrong branch of government. It does not so much challenge the governing standards as seek to rewrite the Copyright Act, specifically Section 501(b) and the termination provisions, Sections 304(c) and 203(a), none of which confers standing upon RCF or includes passive royalty recipients within the zone of interests protected by the termination provisions.

RCF's policy arguments, like its other arguments, boil down to reiterating its alleged injury in the form of less domestic royalties. OB 43. Again, while alleged

injury supports constitutional standing it does nothing to satisfy the prudential requirements. *Warth*, 422 U.S. at 498. If RCF's professed need for declaratory relief based on alleged injury gave it standing, the prudential standing requirements would rarely apply.

RCF's hypotheticals as to instances where the interests of a terminated grantee and those of a royalty recipient diverge also do nothing to convey standing. In fact, they undercut RCF's assertion of third party standing, where its interests must be aligned with those of Warner/Chappell. *See Pony*, 433 F.3d at 1147.

RCF's argument, that "as a matter of policy… it would be incongruous" for a beneficial owner to sue for copyright infringement, but lack standing to challenge a statutory termination notice, is equally unpersuasive. OB 45.

As the district court correctly reasoned:

[T]hat outcome is not so unusual as to compel a different conclusion. As Defendants note, in an infringement suit, the interests of a beneficial owner and a legal owner of a copyright are usually aligned — both parties would want to prevent illegal copying of the work. But after receiving termination notices, the grantee might be more interested in maintaining an amicable relationship with the statutory heirs to facilitate renegotiations of the grants at issue, rather than to challenge the terminations. Congress even acknowledged this interest by allowing the grantee to enter a new grant before the effective date of the termination when all others must wait until after that date. [17 U.S.C. § 304(c)(6)(D)].

1 ER 62-63. This also satisfies the overall policy objectives of the Copyright Act's termination provisions of allowing spouses and children to finally benefit from the increased market value of an author's works.

In fact, there are legitimate policy reasons for not glutting the courts with lawsuits from any third party profit or royalty participant who may be adversely affected by the exercise of termination rights under the Copyright Act, particularly, as here, when the real parties in interest do not challenge the statutory termination.

## CONCLUSION

This Court should affirm the district court's judgment dismissing RCF's First Claim for lack of standing.

Dated: November 15, 2013          Respectfully submitted,

                                   /s/ Marc Toberoff
                                   Marc Toberoff

                                   TOBEROFF & ASSOCIATES, P.C.
                                   Attorneys for Defendants-Appellees,
                                   Raenee Robinson, Ray Charles Robinson,
                                   Sheila Robinson, David Robinson, Robert
                                   F. Robinson, Reatha Butler,
                                   and Robyn Moffet.

39

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,932 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 Times New Roman 14 point font.

Dated: November 15, 2013        /s/ Marc Toberoff

 Marc Toberoff

 TOBEROFF & ASSOCIATES, P.C.
 Attorneys for Defendants-Appellees,
 Raenee Robinson, Ray Charles Robinson,
 Sheila Robinson, David Robinson, Robert
 F. Robinson, Reatha Butler and Robyn
 Moffet.

## **ADDENDUM**

All applicable statutes, rules, and regulations are contained in the Statutory

Addendum to Appellant The Ray Charles Foundation's Opening Brief.

## **STATEMENT OF RELATED CASES**

Defendants know of no related cases within the meaning of Circuit

Rule 28-2.6.

Dated: November 15, 2013        /s/ Marc Toberoff
                                Marc Toberoff

                                TOBEROFF & ASSOCIATES, P.C.
                                Attorneys for Defendants-Appellees,
                                Raenee Robinson, Ray Charles Robinson,
                                Sheila Robinson, David Robinson, Robert
                                F. Robinson, Reatha Butler and Robyn
                                Moffet.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2013, I caused to be electronically filed the Answering Brief of Defendants-Appellees, Raenee Robinson, Ray Charles Robinson, Sheila Robinson, David Robinson, Robert F. Robinson, Reatha Butler and Robyn Moffet with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all interested parties in this case are registered CM/ECF users.

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on November 15, 2013, at Malibu, California.

/s/ Marc Toberoff
Marc Toberoff